UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE REPUBLIC OF IRAQ, including as
PARENS PATRIAE in behalf of the
CITIZENS of the REPUBLIC OF IRAQ,

               Plaintiff,

      -against-

ABB AG, et al.,

              Defendants.

ECF CASE

08 Civ. 5951 (SHS)


# THE REPUBLIC OF IRAQ'S REPLY MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION WITH BNP PARIBAS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I. THE ARBITRATION PANEL DETERMINES ITS JURISDICTION UNDER THE NEW YORK CONVENTION .................................................................................. 1

II. THE ARBITRATION PANEL HAS JURISDICTION OVER THE REPUBLIC OF IRAQ'S CLAIMS .................................................................................................... 4

III. BNP AGREED TO ARBITRATE THE CONTRACT-BASED CLAIMS ..................... 6

IV. THE REPUBLIC OF IRAQ DID NOT WAIVE THE RIGHT TO ARBITRATE ............ 8

V. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Ana Dist., Inc. v. CMA-CGM (Am.) Inc.*,
    329 F. Supp. 2d 565 (S.D.N.Y. 2004)..................................................................... 4

*Arthur Andersen LLP v. Carlisle*,
    129 S. Ct. 1896 (2009).............................................................................................. 4

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*,
    2003 WL 23018888 (S.D.N.Y. 2003)....................................................................... 5

*Chamois v. Countrywide Home Loans*,
    2003 WL 23022033 (S.D.N.Y. 2003)....................................................................... 9

*China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*,
    334 F.3d 274 (3d Cir. 2003)...................................................................................... 1

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995).......................................................................................... 7

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005)...................................................................................... 4

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985).................................................................................................. 7

*Doctor's Assocs., Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995)........................................................................................ 8

*Egnotovich v. Katten Muchin Zavis & Roseman LLP*,
    18 Misc. 3d(A) (Sup. Ct. N.Y. Co. 2008)................................................................. 5

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
    403 F.3d 85 (2d Cir. 2005)........................................................................................ 9

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 939 (1995)............................................................................................ 2, 3

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
    66 N.Y.2d 38 (1985)............................................................................................ 5-6

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002).................................................................................................... 8

*Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n,*
  2005 WL 1384055 (S.D.N.Y. 2005) .................................................................. 1

*In re Merrill Lynch Auction Rate Sec. Litig.,*
  2010 WL 532855 (S.D.N.Y. 2010) .................................................................. 10

*Madeira v. Affordable Hous. Found., Inc.,*
  469 F.3d 219 (2d Cir. 2006) ............................................................................ 5

*Nat'l Union Fire Ins. Co. of Pittsburgh,*
  2010 WL 1816271 (2d Cir. 2010) .................................................................. 10

*Nicor Int'l Corp. v. El Paso Corp.,*
  292 F. Supp. 2d 1357 (S.D. Fla. 2003) ............................................................ 9

*Process & Storage Vessels, Inc. v. Tank Serv., Inc.,*
  541 F. Supp. 725 (D. Del. 1982), *aff'd,*
  760 F.2d 260 (3d Cir. 1985) ............................................................................ 5

*Rector v. Calamus Group, Inc.,*
  17 A.D.3d 960 (3d Dep't 2005) ...................................................................... 5

*S & R Co. of Kingston v. Latona Trucking, Inc.,*
  159 F.3d 80 (2d Cir. 1998) .............................................................................. 8

*SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.,*
  49 F. Supp. 2d 331 (S.D.N.Y. 1999) .............................................................. 10

*Scherk v. Alberto-Culver Co.,*
  417 U.S. 506 (1974) ........................................................................................ 1

*Seaver v. Ransom,*
  224 N.Y. 233 (1918) ........................................................................................ 6

*State of Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling,*
  95 N.Y.2d 427 (2000) ...................................................................................... 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  130 S. Ct. 1758 (2010) .................................................................................... 3

*Telenor Mobile Commc'ns AS v. Storm LLC,*
  524 F. Supp. 2d 332 (S.D.N.Y. 2007) ............................................................ 3

*Tokio Marine & Fire Ins. Co. v. M/V Saffron Trader,*
  257 F. Supp. 2d 651 (S.D.N.Y. 2003) ............................................................ 9

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer,*
   515 U.S. 528 (1995) ................................................................................................ 1


**DOCKETED CASE**

*Rent-A-Center, W., Inc. v. Jackson,*
   No. 09-497, slip op. (June 21, 2010) .................................................................. 3, 8


**STATUTES**

9 U.S.C. § 3 ............................................................................................................... 1

9 U.S.C. § 4 ............................................................................................................... 1

9 U.S.C. §§ 201-208 ................................................................................................. 1


**OTHER AUTHORITIES**

Howard M. Holtzmann & Joseph E. Neuhaus,
A GUIDE TO THE UNCITRAL MODEL LAW ON
INTERNATIONAL COMMERCIAL ARBITRATION,
LEGISLATIVE HISTORY AND COMMENTARY
   480 (1989) ............................................................................................................. 3

J.H. Carter & J. Fellas,
*International Commercial Arbitration in New York*
   (Oxford 2010) ....................................................................................................... 4

Leonardo D. Graffi,
*Securing Harmonized Effects of Arbitration Agreements
Under the New York Convention,*
   28 HOUS. J. INT'L L. 663 (2006) ........................................................................ 3-5

Natasha Wyss,
*First Options of Chicago, Inc. v. Kaplan:
A Perilous Approach to Kompetenz-Kompetenz,*
   72 TUL. L. REV. 351 (1997) ................................................................................. 2

W. Laurence Craig,
*International Chamber of Commerce Arbitration*
   515-16 (3d ed. 2000) ............................................................................................ 1

Arbitration Rules of the United Nations
Commission on International Trade Law (UNCITRAL Rules),
   U.N. Doc. A/31/17 (1976) ................................................................................... 3, 4

Recognition and Enforcement of Foreign
Arbitral Awards (June 10, 1958)
   330 U.N.T.S. 38 ....................................................................................................... 1

I.  **THE ARBITRATION PANEL DETERMINES ITS JURISDICTION UNDER THE NEW YORK CONVENTION**

As BNP Paribas ("BNP") points out, the Republic of Iraq's motion to compel arbitration is properly made under a treaty commonly referred to as the "New York Convention."[1] BNP Mem. at 5 n.2.[2] The Supreme Court has repeatedly emphasized that the United States entered into this treaty so that international contracts would be interpreted and enforced with uniformity:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 538 (1995) (quoting *Scherk, supra*).

"The one element common to all nations is the conferral of the power to decide jurisdiction on the arbitrators themselves." *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 288 (3d Cir. 2003). In the context of international contracts with arbitration clauses, the bedrock rule is that an arbitration panel decides the limits of its jurisdiction unless the parties explicitly state otherwise in the agreement. W. Laurence Craig, *International Chamber of Commerce Arbitration* 515-16 (3d ed. 2000). Thus, because the Republic of Iraq's motion to arbitrate arises under an international treaty and the uniform

---

[1] The New York Convention is the short name for the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, opened for signature June 10, 1958, 330 U.N.T.S. 38. The United States became a signatory to the treaty in 1970, 21 U.S.T. 2517, T.I.A.S. 6997, and implemented the treaty in the same year by amendment of the Federal Arbitration Act. *See* Act of July 31, 1970, Pub. L. 91-368, 84 Stat. 692, codified at 9 U.S.C. §§ 201-208. Thus, the Court should grant the motion to compel arbitration under section 206 – not section 4. *See* Dkt. No. 396 (notice of motion erroneously moving under 9 U.S.C. § 4). Staying the litigation is still proper under section 3, however. *Hughes, Hooker & Co. and Hughes, Hooker (Correspondents) S.A. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 2005 WL 1384055, at *3 n.2 (S.D.N.Y. 2005) (Stein, J.).

[2] "BNP Mem." refers to Dkt. No. 414, Memorandum of Law in Opposition to Plaintiff's Motion to Compel Arbitration and in Support of the Motion of BNP Paribas to Enjoin Arbitration.

standard across the world is that arbitrators determine their own jurisdiction, this Court should compel arbitration and leave the remaining issues, including jurisdiction, to the arbitration panel.

BNP counters that "[a]s a general rule, the 'question of arbitrability . . . is undeniably an issue for judicial determination.'" BNP Mem. at 7 (citation omitted). In support of this argument, BNP relies on *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 939 (1995), a decision that interpreted a domestic contract arising under a domestic provision of the Federal Arbitration Act. In *First Options*, the Supreme Court held that when a contract is silent or ambiguous as to whether the arbitration panel determines its own jurisdiction, courts should hold that parties agreed to give the decision to the Court. The Supreme Court reasoned:

> A party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers. And, given the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the "who should decide arbitrability" point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.

514 U.S. at 945 (citations omitted).[3]

*First Options* rests on the expectations that domestic United States parties have in a domestic arbitration. 514 U.S. at 944. The rationale underlying *First Options* does not apply to international contracts where parties' expectations are the opposite. Natasha Wyss, *First Options of Chicago, Inc. v. Kaplan: A Perilous Approach to Kompetenz-Kompetenz*, 72 TUL. L. REV. 351, 352 (1997) ("The right of an arbitral tribunal to rule on its own jurisdiction is generally accepted throughout the world."). Indeed, the Supreme Court has repeatedly stated that "courts

---

[3] Nonetheless, the Supreme Court explained that, "a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration." *Id.* at 943. As previously explained, the arbitration clause expresses a clear and unmistakable intent that the arbitrators would decide their jurisdiction. Pl. Mem. at 7-10.

2

and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (internal quotation marks and citations omitted). When sophisticated, global companies enter into an international contract containing an arbitration clause, they expect that an arbitration panel, not a court, will determine its jurisdiction. The Court should give effect to this expectation without imposing *First Options'* heightened burden for domestic arbitrations.

Finally, even assuming that *First Options* applies, BNP clearly and unmistakably agreed to have the arbitration panel determine its own jurisdiction. Pl. Mem. at 7-11;[4] *see also Rent-A-Center, West, Inc. v. Jackson*, No. 09-497, slip op. at 5 (June 21, 2010) ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement."). In particular, BNP explicitly agreed to abide by UNCITRAL Rules,[5] which provide:

> The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of the separate arbitration agreement.

UNCITRAL Rules, art. 21. This language is clear and gives arbitrators the power to decide their own jurisdiction.[6] Howard M. Holtzmann & Joseph E. Neuhaus, A GUIDE TO THE UNCITRAL MODEL LAW ON INTERNATIONAL COMMERCIAL ARBITRATION, LEGISLATIVE HISTORY AND COMMENTARY 480 (1989); Leonardo D. Graffi, *Securing Harmonized Effects of Arbitration*

---

[4] "Pl. Mem." refers to Dkt. No. 397, Memorandum of Law in Support of Plaintiff the Republic of Iraq's Motion to Compel Arbitration of its Contract Claims Against Banque Nationale de Paris S.A.

[5] "UNCITRAL Rules" refers to Arbitration Rules of the United Nations Commission on International Trade Law, U.N. Doc. A/31/17 (1976) *available at* http://www.uncitral.org/pdf/english/texts/arbitration/arb-rules/arb-rules.pdf.

[6] In arguing that article 21 is not clear, BNP relies on *Telenor Mobile Communications AS v. Storm LLC*, 524 F. Supp. 2d 332 (S.D.N.Y. 2007). As previously argued, *Telenor* is distinguishable because it arose in the context of a court confirming an award. Pl. Mem. at 10 n.3. Nonetheless, if this Court holds that *Telenor* is indistinguishable as BNP urges, it should hold that *Telenor* was wrongly decided as article 21 expressly incorporates the doctrine of kompetenz-kompetenz.

3

*Agreements Under the New York Convention*, 28 HOUS. J. INT'L L. 663, 682-83 (2006) ("Even if some legal systems did not expressly incorporate this principle, the parties can always choose to make reference in their arbitration agreement to the 1976 UNCITRAL Rules . . . which incorporate the doctrine of kompetenz-kompetenz.").[7]

## II. THE ARBITRATION PANEL HAS JURISDICTION OVER THE REPUBLIC OF IRAQ'S CLAIMS

If this Court holds that it must determine the issue of jurisdiction, it should hold that the arbitration panel has jurisdiction over Iraq's claims. As the Supreme Court recently held in a case that BNP fails to discuss, a third-party may assert arbitration against a party if the relevant state law allows it. *Arthur Andersen*, 129 S. Ct. at 1903 ("We hold that . . . a litigant who was not a party to the relevant arbitration agreement may invoke § 3 if the relevant state contract law allows him to enforce the agreement.").

Under New York law, a third-party beneficiary may assert all the terms of a contract. *E.g., Ana Dist., Inc. v. CMA-CGM (Am.) Inc.*, 329 F. Supp. 2d 565 (S.D.N.Y. 2004). A third-party beneficiary "stands in the shoes" of the party that signed the contract for its benefit:

> A beneficiary's rights, like the rights of the promisee, are absolutely defined by the terms of the contract. To the same extent that third parties can take advantage of beneficial and favorable terms of the contract, they are also bound by any in adequacies [sic] of the contract. Therefore, as alleged third-party beneficiaries of the Third Escrow Agreement, plaintiffs

---

[7] While BNP argues that non-signatories to a contract may not compel arbitration on the issue of arbitrability, *see* BNP Mem. at 9-10, the decisions on which they rely contradict the Second Circuit's decision in *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205 (2d Cir. 2005), which held that a non-signatory may compel arbitration, even on issues of arbitrability. *Id.* at 209. Moreover, two of these three decisions pre-date the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1903 (2009), while the other opinion simply fails to acknowledge the Supreme Court's holding that a non-signatory to an agreement may invoke arbitration. Finally, as previously argued, courts are more willing to compel arbitration against signatories "since it is undisputed that the signatory resisting arbitration agreed to arbitrate with someone (albeit not necessarily with the person seeking to enforce the arbitration agreement) . . . ." Pl. Mem. at 10 (quoting J.H. Carter & J. Fellas, *International Commercial Arbitration in New York* at 216 (Oxford 2010)).

4

are bound by all of its terms, not just the provisions that allow them to assert their claims.

*Egnotovich v. Katten Muchin Zavis & Roseman LLP*, 18 Misc. 3d (A) (Table; text at 2008 WL 199757, at *5 (Sup. Ct. N.Y. Co. 2008)) (internal quotation marks and citation omitted); *see also Rector v. Calamus Group, Inc.*, 17 A.D.3d 960, 962 (3d Dep't 2005).

BNP's repeated argument that it did not agree to arbitrate with the Republic of Iraq is beside the point. The United Nations bargained for, and obtained, the right to arbitration. As a third-party beneficiary under New York law, the Republic of Iraq may assert this term, or any other provision of the contract, when alleging that BNP breached the contract or its fiduciary duties that arose under it.[8] The Republic of Iraq is a third-party beneficiary because (1) the contract was intended for the Republic of Iraq's benefit and (2) the benefit to the Republic of Iraq is sufficiently immediate to indicate that BNP assumed a duty to compensate the Republic of Iraq if the benefits of the contract were lost. *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 251 (2d Cir. 2006) (citing *State of Cal. Pub. Employees Ret. Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434-35 (2000)).

Moreover, "[u]nder New York law, when there is no showing of 'some obligation or duty running from the promisee to the third party beneficiary,' a third party still may enforce a contract when 'no one other than the third party can recover if the promisor breaches the contract.'" *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *11 (S.D.N.Y. 2003) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66

---

[8] This rule cuts both ways. For example, a third-party beneficiary seeking to enforce an agreement is bound by a forum selection clause even though that third-party did not agree to litigate in that forum. *See, e.g., Process & Storage Vessels, Inc. v. Tank Serv., Inc.*, 541 F. Supp. 725 (D. Del. 1982), *aff'd*, 760 F.2d 260 (3d Cir. 1985) (applying New York law).

5

N.Y.2d 38, 45 (1985)).[9] The Republic of Iraq is the only party that can assert the breach of contract claim because it is the only party that was harmed by the alleged breach. Because of BNP's breaches, the Republic of Iraq (1) received substandard goods, (2) had its oil sold under market value, and (3) had $1.8 billion in property diverted to the Hussein Regime. In fact, any remedy that a jury might award as relief for the damages caused by BNP's breaches would be given to the Republic of Iraq (not the United Nations), because the money and property diverted was owned by the Republic of Iraq (not the United Nations). Thus, the Republic of Iraq is a third-party beneficiary that may enforce the terms of the contract including the right to arbitrate – a result that makes perfect sense given that only the Republic of Iraq has the incentive to vigorously litigate the claims.[10]

### III. BNP AGREED TO ARBITRATE THE CONTRACT-BASED CLAIMS

The Republic of Iraq has moved for arbitration only on those claims that are based on its third-party beneficiary status under the Agreement for Banking Services Pursuant to Security Council Resolution 986 (1995) ("Banking Services Agreement"). In this case, the arbitration provision states:

> The arbitrators selected shall have a working knowledge of banking practices of major international commercial banks, including the Services . . . [and] the arbitrators shall apply (subject to Article 2.1.3) the substantive law of the State of New York relating to banking services and practices in the nature of the Services . . . .

Banking Services Agreement, art. 1.23.2. This language indicates that the agreement to arbitrate is limited to claims implicating contractual issues.

---

[9] "The third-party beneficiary concept arises from the notion that 'it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay' or perform." *Fourth Ocean*, 66 N.Y.2d at 43 (quoting *Seaver v. Ransom*, 224 N.Y. 233, 237 (1918)).

[10] The Republic of Iraq's status as a third-party beneficiary is set forth at greater length in its opposition to BNP's supplemental motion to dismiss (Dkt. No. 395 at 14-17).

BNP asserts that there is "gamesmanship inherent in Iraq's position" because "Iraq contends throughout most of its brief that the arbitration provision is written so broadly that it unmistakably gives Iraq the right to arbitrate . . . [but] argues that the provision is not broad enough to include other claims arising out of the Bank's performance of the Agreement." BNP Mem. at 23 n.15. Three reasons belie BNP's argument.

First, it is common for parties to agree to arbitrate certain claims and not every conceivable claim that could arise. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court."). Parties make these specific agreements for good reason: They only want certain claims to be arbitrated by an expert in a specialized field – such as construction, garment-making or, in this case, international banking. In fact, many well-respected arbitrators are not lawyers. Parties use these arbitrators because of the arbitrators' industry, not legal, expertise.

The Republic of Iraq's position is that the parties would expect experts with "working knowledge of banking practices of major international commercial banks" to only resolve the contract-based claims, and not those claims based on federal laws (e.g., RICO). In fact, the arbitrators are limited to applying law "relating to banking services and practices in the nature of the Services." Banking Services Agreement, art. 1.23.2. There is no "gamesmanship inherent" in this argument.

Second, there is nothing inconsistent about an arbitration clause granting the arbitration panel the authority to decide its own jurisdiction while limiting the scope of the arbitration itself. The phrase "[a]ny dispute, controversy or claim arising out of or relating to this Agreement, or

7

breach, termination or invalidity thereof," *id*, indicates that the arbitrators would decide their jurisdiction should there be a dispute about this issue, *cf. Rent-A-Center, West, Inc.*, No. 09-497, slip op. at 5, especially since this is the default in international arbitration. But the other provisions of the contract indicate that the panel's jurisdiction only extends to the contract-based claims.[11]

Third, and most importantly, the arbitration clause and the Banking Services Agreement itself are irrelevant to the Republic of Iraq's non-contractual claims, which are not brought as a third-party beneficiary. Those claims do not depend upon, and would not be defeated by, an adverse finding of third-party beneficiary status. They therefore cannot arise out of or relate to the arbitration clause or the underlying contract. For example, if BNP prevails on its view that the Republic of Iraq is not a third-party beneficiary of the Banking Services Agreement, the Republic of Iraq still has a RICO claim based on BNP's willful participation in the Defendants' scheme.

## IV. THE REPUBLIC OF IRAQ DID NOT WAIVE THE RIGHT TO ARBITRATE

BNP's argument that the Republic of Iraq waived the right to arbitrate should be rejected for three reasons. First, the Supreme Court has held that, even in domestic arbitrations, "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citation omitted). BNP relies on two Second Circuit cases that have been overruled by *Howsam*. *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 456 (2d Cir. 1995); *S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80 (2d Cir. 1998).

---

[11] Even if the Republic of Iraq has incorrectly interpreted the contract, this error would only mean that the arbitration panel has jurisdiction over all of the claims.

Second, unlike a domestic arbitration, the treaty mandates arbitration in these circumstances. Reflecting the strong preference for arbitration, under article II of the New York Convention, the only grounds for refusing to compel arbitration are those situations where the "agreement is null and void, inoperative or incapable of being performed." *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1374 (S.D. Fla. 2003) ("Waiver is not one of the enumerated grounds for non-recognition under the New York Convention."); *cf. Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) (holding that a "court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award").

Third, and finally, even under domestic law, the Republic of Iraq has not waived arbitration. A plaintiff does not waive his right to arbitrate merely by filing an action in district court. *Chamois v. Countrywide Home Loans*, 2003 WL 23022033 (S.D.N.Y. 2003). The "essential test is whether the pursuit of a remedy other than arbitration has worked substantial prejudice to the other party." *Tokio Marine & Fire Ins. Co. v. M/V Saffron Trader*, 257 F. Supp. 2d 651, 654 (S.D.N.Y. 2003).

BNP has failed to prove substantial prejudice. Notably, the Republic of Iraq agreed to stay discovery in this case after filing its complaint. Moroever, as BNP argues, "the New York Convention requires proof" of an agreement. BNP Mem. at 5 n.2. It would have been impossible to initiate an arbitration as the Republic of Iraq had no "proof" – i.e., it did not have a complete version of the contract until BNP attached it as an exhibit to its motion to dismiss.[12]

---

[12] The Republic of Iraq was diligent in attempting to obtain an official copy of the agreement. On June 25, 2009, the Permanent Mission of the Republic of Iraq sent a letter to the United Nations requesting a copy of the Banking Services Agreement. On July 31, 2009, the Republic of Iraq filed its amended complaint. On January 15, 2010, BNP filed its motion to dismiss the Republic of Iraq's complaint and entered into the record a copy of the executed Banking Services Agreement. Finally, on January 27, 2010, the United Nations sent an incomplete copy of the Banking Services Agreement to the Republic of

The parties have not engaged in extensive pretrial discovery procedures that would be unavailable in arbitration, nor has the Republic of Iraq forced BNP to respond to any substantive motions on the merits. *See e.g., Nat'l Union Fire Ins. Co. of Pittsburgh*, 2010 WL 1816271, at *2 (2d Cir. 2010) (finding waiver where plaintiff has taken pretrial discovery relating to the same contracts it now sought to submit to arbitration); *In re Merrill Lynch Auction Rate Sec. Litig.*, 2010 WL 532855 (S.D.N.Y. 2010) (holding that plaintiffs waived their right to arbitration by pursuing claims against defendants in state and federal court and once defendant filed an answer).[13] Thus, even if this Court reaches the issue of waiver, BNP's argument must be rejected because BNP has failed to show that it was substantially prejudiced.

## V. CONCLUSION

The Republic of Iraq respectfully submits that the parties should be compelled to arbitration and the arbitration panel should determine its jurisdiction. In the alternative, this Court should hold that the Republic of Iraq may assert arbitration of its contract-based claims against BNP as a third-party beneficiary and the arbitration panel should determine whether it has waived arbitration.

---

Iraq (attached as Ex. 2 to the Declaration of Siebott in Opposition to BNP's Motion to Dismiss the Frist Amended Complaint (filed under seal, Apr. 30, 2010)).

[13] BNP's argument regarding waiver primarily rests on two cases, *Merrill Lynch* and *SATCOM* - both of which are easily distinguishable from the case at bar. *See* BNP's Mem. at 21-22 (discussing *Merrill Lynch*, 2010 WL 532855 and *SATCOM International Group PLC v. ORBCOMM International Partners, L.P.*, 49 F. Supp. 2d 331, 339 (S.D.N.Y. 1999)). In *Merrill Lynch*, the court found waiver after plaintiff pursued its claims in both state and federal forums, amended its complaint three times, and most importantly, because plaintiff decided to pursue arbitration only after defendant "filed an answer to the third amended complaint." 2010 WL 532855, at *3. In *SATCOM*, plaintiff waived its arbitration rights by pursuing arbitration only after the court denied its motion for preliminary injunction, and after the parties engaged in vigorous discovery for two months, taken depositions, and participated in the preliminary injunction hearing which was equivalent to a "mini-trial." 49 F. Supp. 2d at 335, 340.

Dated: June 22, 2010
      New York, New York

                    **BURFORD & MANEY, LLP**

                    By: /s/ Mark Maney
                    Mark Maney* (*mmaney@burfordmaney.com*)
                    Roliff Purrington* (*rpurr@burfordmaney.com*)
                    1221 McKinney Street, Suite 3150
                    Houston, Texas 77010
                    (713) 658-9001 Telephone
                    (713) 658-9011 Facsimile

                    **BERNSTEIN LIEBHARD LLP**

                    By: _____
                    Stanley D. Bernstein (*bernstein@bernlieb.com*)
                    Rebecca M. Katz (*katz@bernlieb.com*)
                    Christian Siebott (*siebott@bernlieb.com*)
                    Brian Lehman (*lehman@bernlieb.com*)
                    10 East 40th Street
                    New York, New York 10016
                    (212) 779-1414 Telephone
                    (212) 779-3218 Facsimile

                    *Counsel for the Republic of Iraq*

---

*Admitted *pro hac vice*.

11