UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE REPUBLIC OF IRAQ, including as
PARENS PATRIAE on behalf of the
CITIZENS of the REPUBLIC OF IRAQ,

          Plaintiff,

  - against -

ABB AG et al.,

          Defendants.

08-CV-05951 (SHS)

ECF CASE

---

## MEMORANDUM OF LAW IN SUPPORT OF THE APPLICATION OF BNP PARIBAS FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Robert S. Bennett
Ellen S. Kennedy (admitted *pro hac vice*)
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
robert.bennett@hoganlovells.com
ellen.kennedy@hoganlovells.com

William J. O'Brien, III
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000
wobrien@skadden.com

Jennifer L. Spaziano (admitted *pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005
(202) 371-7000
jen.spaziano@skadden.com

Attorneys for BNP Paribas

## PRELIMINARY STATEMENT

BNP Paribas (the "Bank") respectfully submits this memorandum of law in support of its application for a temporary restraining order and motion for preliminary injunction enjoining the Republic of Iraq ("Iraq") from taking any action with respect to arbitration, and thereby preserving the status quo, until such time as the Court rules on Iraq's Motion to Compel Arbitration filed April 30, 2010 (Dkt. No. 396), and the Bank's Motion to Enjoin Arbitration filed May 28, 2010 (Dkt. No. 413) (together, the "Arbitration Motions"). Iraq has attempted to upend that status quo by purporting, with no legal basis, to activate a previously dormant (and improper) arbitration against the Bank in advance of the Court's ruling on the Arbitration Motions. If allowed to go forward, such an arbitration would irreparably harm the Bank by forcing it to engage in a wasteful, duplicative proceeding to which it never consented. The Bank therefore respectfully requests that the Court grant the interim relief sought herein.

## RELEVANT BACKGROUND[1]

Iraq filed this lawsuit on June 27, 2008. Pursuant to a stipulated briefing schedule, Iraq filed an amended complaint on July 31, 2009, all Defendants, including the Bank, moved to dismiss the lawsuit on January 15, 2010, Iraq filed its oppositions to the motions to dismiss on or about April 30, 2010, and Defendants filed their replies on June 22, 2010. (Dkt. Nos. 112, 355, 356, 358, 393, 395, 424, 425.)

In addition, on or about April 30, 2010, nearly two years after the lawsuit was filed, Iraq served a Notice of Arbitration on the Bank even though the Bank is not party to any arbitration

---

[1] The below facts are set forth in the Declaration of Jennifer L. Spaziano filed concurrently herewith. References to exhibits herein are to the exhibits attached to the Spaziano Declaration.

1

agreement with Iraq. On that same day, Iraq also filed a motion seeking to compel the Bank to arbitrate certain of the claims asserted in this action. (Dkt. Nos. 396, 397; Ex. 1.)

On May 28, 2010, the Bank filed its opposition to Iraq's motion to compel arbitration together with a cross-motion to enjoin arbitration. (Dkt. Nos. 413, 414; Ex. 2.) Iraq filed a reply memorandum of law in support of its motion to compel arbitration on June 22, 2010 (Dkt. No. 422; Ex. 3), and the Bank filed a reply memorandum of law in support of its motion to enjoin arbitration on June 29, 2010 (Dkt. No. 433; Ex. 4). The motions to dismiss, the motion to compel arbitration and the motion to enjoin arbitration are fully briefed and pending decision by the Court.

Over the past several months, Iraq has attempted to influence the timing of the Court's consideration of these motions. First, in August 2010, Iraq refused to extend the parties' agreed-upon stay of the arbitration proceedings pending the Court's determination of the Arbitration Motions. (Exs. 5-8.)[2] Then, on January 27, 2011, counsel for Iraq sent a letter to the Court requesting that the Court schedule oral argument on the pending motions to dismiss, ostensibly to allow Iraqi government officials who might attend the argument sufficient time "to secure the proper visas." (Ex. 9.) Finally, on February 4, 2011, Iraq sent to the Bank a letter appointing an

---

[2]  In view of the parties' disagreement regarding the arbitrability of the claims that are the subject of the Arbitration Motions, Iraq and the Bank reached an agreement in May 2010 that Iraq would not take any action with respect to arbitration, and that the Bank would not be obligated to take any action in response to the Notice of Arbitration or otherwise with respect to arbitration, until September 30, 2010, or such other date as may be ordered by the Court. This agreement was reflected in Paragraph 3 of a May 17, 2010 Stipulation and Order (Dkt. No. 411). Iraq refused to extend the stay agreement upon its expiration on September 30, 2010. Accordingly, by letter dated August 31, 2010, the Bank requested that the Court extend that date until 45 days after the Court rules on the pending Motion to Compel Arbitration. (Ex. 5.) In its responses, Iraq did not assert that it would suffer any prejudice if the stay of arbitration were extended. (Exs. 6 and 8.) Instead, Iraq challenged the way in which the Bank presented the issue to the Court, insisting that the relief requested by the Bank was injunctive in nature and therefore required the filing of a motion. (*Id.*)

2

arbitrator and demanding that the Bank appoint its arbitrator, pursuant to UNCITRAL rules, within thirty days. (Ex. 10.)

Unfortunately, the Bank now has no viable option other than to seek the Court's assistance to ensure that it is not forced to participate in a baseless arbitration proceeding. That is because, under UNCITRAL rules, Iraq's appointment of an arbitrator effectively has activated the arbitration proceeding, triggering the Bank's obligation to appoint its own arbitrator. Should the Bank refuse to appoint an arbitrator (which it naturally would be inclined to avoid in order to prevent any suggestion it had submitted to arbitral jurisdiction), UNCITRAL rules potentially would operate to prejudice the Bank, because they provide procedures for the appointment of an arbitrator by a third party (known as an "appointing authority") so that the arbitration can proceed. Thus, the Bank cannot stop the arbitration proceeding that Iraq has improperly commenced without seeking emergency relief from the Court to enjoin it. This relief plainly is warranted for the reasons set forth below.

## ARGUMENT

The Federal Arbitration Act ("FAA") empowers courts to "enjoin arbitration where arbitration is inappropriate." *SATCOM Int'l Group PLC v. ORBCOMM Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999). In determining whether to issue a temporary restraining order, the court applies the same legal standard as that for a motion for preliminary injunction. *Local 1814, Int'l. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 375 (S.D.N.Y. 2009). Thus, the issuance of a temporary restraining order and a preliminary injunction is warranted if the movant demonstrates "(1) that it will be irreparably harmed if an injunction is not granted and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious

3

questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." *Merrill Lynch Inv. Managers v. Optibase*, 337 F.3d 125, 129 (2d Cir. 2003). These standards easily are satisfied here.

## I. THE BANK WILL SUFFER IRREPARABLE HARM IF ARBITRATION IS ALLOWED TO PROCEED.

This court repeatedly has recognized that "a party necessarily suffers irreparable harm if 'forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable.'" *Proshares Trust v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010) (Stein, J.) (quoting *Merrill Lynch Inv. Managers*, 337 F.3d at 129); *Janney Montgomery Scott LLC v. Greenberg*, No. 10 Civ. 4248 (LAK), 2010 U.S. Dist. LEXIS 67657, at *5 (S.D.N.Y. Jul. 1, 2010) ("The Second Circuit expressly has held that a party suffers irreparable injury when forced to spend time and resources arbitrating a claim that is not subject to an agreement to arbitrate."); *UBS Securities LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("It is beyond dispute that irreparable harm would result if [plaintiff seeking to enjoin arbitration] were compelled to arbitrate defendants' claims without having agreed to arbitration."); *Zarepta Chem. v. Solae, LLC*, No. 05 CV 8265 (CLB), 2005 U.S. Dist. LEXIS 43805, at *7 (S.D.N.Y. Oct. 26, 2005) (noting, in case arising under the New York Convention, that "[a] person against whom an arbitration has been initiated, who has not agreed to arbitrate, directly or by operation of law, is deemed to be irreparably damaged"); *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487 (NRB), 2004 U.S. Dist. LEXIS 2289, at *8-9 (S.D.N.Y. Feb. 13, 2004) (same, reasoning that "[a]lthough an injury that is adequately compensated by a monetary award is not considered 'irreparable,' the time and resources a party would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages") (quoting *Maryland Casualty Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997)); *Spear, Leeds & Kellogg v. Cent. Life*

4

*Assurance Co.*, 879 F. Supp. 403, 404 (S.D.N.Y. 1995) (holding that compelling arbitration of a matter not properly subject to arbitration constitutes "*per se* irreparable harm"), *rev'd on other grounds*, 85 F.3d 21 (2d Cir. 1996). Accordingly, the Bank necessarily will suffer irreparable harm if Iraq is not enjoined from arbitrating pending the Court's adjudication of the Arbitration Motions.[3]

## II.   THE BANK IS LIKELY TO SUCCEED ON THE MERITS.

As explained fully in the Bank's memorandum of law in opposition to Iraq's motion to compel arbitration and in support of its motion to enjoin arbitration (Ex. 2), the Bank is likely to succeed on the merits of its arguments because the Bank did not agree to arbitrate any claims with Iraq and Iraq has, in any event, acted in a manner that precludes it from now asserting a right to arbitrate. (*See* Ex. 2 at 4-23.) The Bank's memorandum establishes that:

1. Iraq is not a signatory to any agreement with the Bank and the Bank has not agreed to arbitrate any claims with Iraq nor has it agreed to submit the issue of arbitrability to an arbitrator. Indeed, the plain language of the arbitration provision upon which Iraq seeks to arbitrate – a provision in the Banking Services Agreement between the Bank and the United Nations, its sole customer thereunder – demonstrates that only disputes between the two parties to the Banking Services Agreement may be referred to arbitration. Iraq's claims against the Bank thus are not arbitrable and the Bank cannot be compelled to arbitrate with Iraq. *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) ("arbitration is a matter of consent, not coercion"). (*See* Ex. 2 at 5-6.)

---

[3] In assessing the propriety of granting injunctive relief, some courts in this Circuit also have considered whether "the public interest weighs in favor of granting an injunction." *Metropolitan Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010); *but see Mullins v. City of New York*, 626 F.3d 47, 52-53 (2d Cir. 2010) (articulating preliminary injunctive relief standard without the public interest factor); *Salvatierra v. Connolly*, No. 09 Civ. 3732 (SHS), 2010 U.S. Dist. LEXIS 137731, at *74-75 (S.D.N.Y. Sept. 1, 2010) (Stein, J.) (same). Assuming this is a factor that should be considered, it strongly favors granting the requested injunctive relief here because "[t]here is a significant public interest in conserving judicial and arbitration resources by preventing duplicative proceedings," such as the dual arbitration and litigation tracks Iraq seeks to pursue. *Morgan Stanley & Co v. Seghers*, No. 10 Civ. 5378 (DLC), 2010 U.S. Dist. LEXIS 107686, at *22 (S.D.N.Y. Oct. 8, 2010).

2. Iraq's efforts to avoid the limitations in the arbitration provision of the Banking Services Agreement fail as a matter of law, for several reasons:

- Iraq cannot avoid the limitations in the arbitration provision by characterizing its motion as raising a question of arbitrability because (i) the arbitration provision does not encompass questions of arbitrability and (ii) Iraq, as a non-party, is not entitled to have the question of arbitrability referred to arbitration. (*See* Ex. 2 at 7-13.)

- Iraq cannot compel arbitration of its claims by claiming to be a third-party beneficiary of the Banking Services Agreement because (i) Iraq is not a third-party beneficiary of the Banking Services Agreement; and (ii) the arbitration provision of the Banking Services Agreement is expressly limited to the United Nations and the Bank. (*See* Ex. 2 at 13-19.)

- Iraq cannot delay the resolution of this matter by seeking discovery because discovery is neither necessary nor appropriate to resolve the question of the arbitrability of Iraq's claims against the Bank. (*See* Ex. 2 at 19-20.)

3. Iraq is precluded from pursuing arbitration because it has engaged in substantial litigation in this Court. *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 Civ. 6770 (LAP), 2010 U.S. Dist. LEXIS 12764, at *12 (S.D.N.Y. Feb. 8, 2010) (holding that plaintiff waived its right to arbitrate following eleven months of pre-trial litigation, including filing amended complaints and stipulating to a scheduling order resulting in defendant's submission of a pre-answer letter response); *SATCOM*, 49 F. Supp. 2d at 335 & 341 (holding that plaintiff waived its right to pursue arbitration following four months of litigation and a court ruling denying plaintiff's motion for preliminary injunction). (*See* Ex. 2 at 21-23.)

For all these reasons, Iraq has no basis to arbitrate and has in any event acted in a manner that precludes its ability to now assert a right to arbitrate. The Bank therefore is likely to succeed on the merits.[4]

---

[4] For the Court's convenience, complete copies of (i) Iraq's brief in support of its motion to compel arbitration; (ii) the Bank's brief in opposition to Iraq's motion to compel arbitration and in support of its cross-motion to enjoin arbitration; (iii) Iraq's reply brief; and (iv) the Bank's reply brief are attached to the Spaziano Declaration as Exhibits 1-4.

6

## III. IRAQ WILL NOT SUFFER ANY PREJUDICE FROM THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Given the Bank's ability to establish likelihood of success on the merits, it is not necessary to show that Iraq would not suffer prejudice if it is enjoined from proceeding with arbitration pending adjudication of the Arbitration Motions. Nevertheless, the Bank readily can show the lack of such prejudice, which is demonstrated by, among other things (i) Iraq's initial willingness to agree to stay arbitration proceedings to permit the Court "sufficient time within which to rule on the Motion to Compel Arbitration," (Dkt. No. 411); (ii) Iraq's failure to identify any prejudice to it resulting from an extension of the agreed upon stay in either its September 1 or September 3 correspondence to the Court (Exs. 6 and 8); and (iii) Iraq's decision to wait four months from the expiration of the stipulated stay of arbitration to appoint an arbitrator.[5] Indeed, Iraq has asserted that it served the Notice of Arbitration merely because it "deemed that such a notice might be considered a prerequisite to a motion to compel arbitration." (Ex. 1 at 4 n.1.) By its own statements and course of conduct, Iraq has shown that it will not be prejudiced if it is enjoined from proceeding with arbitration pending the Court's ruling on the Arbitration Motions.

---

[5] This decision is consistent with Iraq's suggestion to the Court in early September 2010 that it might not pursue arbitration proceedings even if not precluded by this Court from doing so. (*See* Exs. 6 and 8.)

7

## CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court grant its motion and issue a temporary restraining order and preliminary injunction (i) enjoining Iraq from taking any action with respect to arbitration, including with respect to the Notice of Arbitration purportedly served on April 30, 2010, pending adjudication of the Arbitration Motions; and (ii) enjoining Iraq from taking any action to have a second arbitrator appointed under UNCITRAL rules until no earlier than thirty days after the Court's ruling on the Arbitration Motions.

Dated: February 15, 2011

*Robert S. Bennett (by JLSmtz permission)*
Robert S. Bennett
Ellen S. Kennedy (admitted *pro hac vice*)
Hogan Lovells US LLP
555 Thirteenth Street NW
Washington, DC 20004
(202) 637-5600
robert.bennett@hoganlovells.com
ellen.kennedy@hoganlovells.com

William J. O'Brien, III
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000
wobrien@skadden.com

Jennifer L. Spaziano (admitted *pro hac vice*)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue NW
Washington, DC 20005
(202) 371-7000
jen.spaziano@skadden.com

Attorneys for BNP Paribas