UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THE REPUBLIC OF IRAQ, including as            :
PARENS PATRIAE on behalf of the               :
CITIZENS of the REPUBLIC OF IRAQ,             :
                                              :    08 Civ. 5951 (SHS)
                        Plaintiff,            :
                                              :    OPINION & ORDER
        -against-                             :
                                              :
ABB AG, et al.,                               :
                                              :
                        Defendants.           :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

      The Republic of Iraq initiated this action against more than ninety defendants to recover damages stemming from the alleged corruption of the United Nations Oil-for-Food humanitarian aid program. Among the accused wrongdoers is BNP Paribas, which operated the escrow account for the program's funds pursuant to a contract between its corporate predecessor and the United Nations. The Republic claims to be a third-party beneficiary of that contract, which it alleges BNP breached by, inter alia, assisting others in violating the program's rules and concealing information about this malfeasance.

      The contract between BNP and the United Nations contains an arbitration provision. The Republic seeks to avail itself of that provision and moves to compel arbitration of this dispute. BNP maintains it cannot be compelled to arbitrate and cross-moves to enjoin arbitration. The Court concludes that the plain language of the contract precludes the Republic from compelling arbitration. Accordingly, the Court denies the Republic's motion to compel arbitration and grants BNP's motion to enjoin arbitration.

## I. BACKGROUND

To alleviate the human suffering resulting from international economic sanctions against Iraq, the United Nations Security Council adopted a resolution in 1995 establishing the Oil-for-Food Programme. *See* S.C. Res. 986, U.N. Doc. S/RES/986 (Apr. 14, 1995). The Programme permitted the sale of Iraqi oil as a means of raising funds for the purchase of humanitarian goods for the Iraqi people. *Id.* ¶¶ 1, 8. The Programme, which ceased in 2003, did not perform as intended. The Republic's complaint alleges a litany of abuses, the substance of which is not relevant to these motions.

Security Council Resolution 986 directed the U.N. Secretary-General to establish an escrow account for Programme funds. *Id.* ¶ 7. The cross-motions to compel and enjoin arbitration concern a 1996 contract ("the Banking Agreement") in which Banque Nationale de Paris S.A., BNP's predecessor, agreed to "open the account provided for in [Security Council Resolution] 986 on behalf of the United Nations for the receipt of funds and for the making of payments pursuant to" that resolution. (Banking Agreement art 1.3.1, Ex. 1 to Decl. of Mark Maney in Supp. of Pl.'s Motion to Compel Arbitration ("Maney Decl."), dated April 30, 2010.)

Under the Banking Agreement, Iraqi oil proceeds were deposited in the BNP escrow account. (Banking Agreement art. 2.2.) BNP issued payments from those proceeds for Iraq's purchases of food, medicine and other supplies. (*Id.* art 2.3.) These transactions occurred under the supervision of the United Nations and in accordance with the procedures and requirements of the Oil-for-Food Programme. (*See id.* art 1.2.) Subject to certain limited exceptions, the agreement required BNP to take instruction only from the United Nations. (*Id.* art. 1.8.) Under no circumstances was BNP to "act in accordance with procedures [provided by] or accept

information from" anyone "in or acting on behalf of the Government of Iraq, or representing persons or entities in Iraq." (*Id.*)

The Banking Agreement contains an arbitration clause that provides in pertinent part as follows:

> Any dispute, controversy or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, unless settled amicably under Article 1.23.1 within sixty (60) days after receipt by one Party of the other Party's request for such amicable settlement, shall be referred by either Party to arbitration in accordance with the UNCITRAL Arbitration Rules then obtaining and the directions contained in this Article 1.23.2.

(*Id.* art 1.23.2.)  As defined in the Banking Agreement, a reference to a "Party" is a reference only to either the United Nations or BNP.  (*Id.* at 1.)

The Republic invoked this arbitration provision on April 30, 2010—nearly two years after initiating this action—when it provided BNP with a notice of arbitration.  (Maney Decl., Ex. 2.)  At the same time, the Republic moved in this litigation to compel arbitration.  BNP subsequently cross-moved to enjoin arbitration.  The parties contest whether the Republic is entitled to compel arbitration of its claims.  They further dispute, as an antecedent matter, whether it is the Court or an arbitration panel that should decide that question of arbitrability.

## II. DISCUSSION

### A. Standard on Motions to Compel or Enjoin Arbitration

The Banking Agreement—a written contract for banking services between a French corporation and the United Nations providing for arbitration in the United States, (*see* Banking Agreement at 1, art. 1.23.2)—comes within the ambit of the Convention on the Recognition of Foreign Arbitral Awards (the "New York Convention").  *See* 9 U.S.C. § 202; *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999).  The Federal Arbitration Act ("FAA") grants original jurisdiction to federal courts over actions

3

falling under the New York Convention, *see* 9 U.S.C. § 203; *Sarhank Grp. v. Oracle Corp.*, 404 F.3d 657, 659-60 (2d Cir. 2005), and empowers a court to compel arbitration where appropriate, *see* 9 U.S.C. § 206.  Though not expressly provided for in the FAA, it has long been held that a court has the concomitant authority to enjoin arbitration as well.  *See, e.g.*, *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 867-68 (1st Cir. 1981); *Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 342 (S.D.N.Y. 1999).

In determining whether claims are subject to arbitration, the summary judgment standard applies "whether the relief sought is an order to compel arbitration or to prevent arbitration." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When the matter hinges on interpretation of a disputed contract provision, a court's "primary objective is to give effect to the intent of the parties as revealed by the language they chose to use" and it should grant summary judgment when the words of the contract "convey a definite and precise meaning."  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).

The Republic is not a party to the Banking Agreement, but that by itself is not reason to preclude it from enforcing the Banking Agreement's arbitration provision.  A non-party may compel arbitration where "traditional principles of state law" such as "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel" render an arbitration agreement enforceable at the non-party's behest.  *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009) (internal quotation marks omitted); *see Smith/Enron*, 198 F.3d at 97 (recognizing that "'ordinary principles of contract and agency'" are

relevant to determining a non-party's arbitration rights in New York Convention cases). In this case, the Republic argues it may compel arbitration because it is a third-party beneficiary to the Banking Agreement and as such it has the right to invoke that contract's arbitration provision.

      B.   <u>The Court Determines Whether the Republic's Claims Are Arbitrable</u>

Before addressing the merits of the Republic's position, the Court must determine whether it is appropriate to do so. The Republic maintains that the scope of its arbitration rights is itself an issue to be decided by the arbitrator. BNP, however, insists that the Court must decide this issue of arbitrability.

Although the federal policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration," nonetheless, "arbitrability questions are presumptively to be decided by the courts, not the arbitrators themselves." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (internal quotation marks omitted); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995). This presumption in favor of the court deciding whether or not an issue is arbitrable applies in cases arising under the New York Convention, *Telenor*, 584 F.3d at 406, and is overcome only by "*clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator," *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (internal quotation marks omitted) (emphasis in original).

There is simply no "clear and unmistakable evidence from the arbitration agreement" that the Republic and BNP agreed to arbitrate the issue of whether their dispute is arbitrable for the simple reason that there is no contract between them. Nor can it be said that the Banking Agreement between BNP and the United Nations "clearly and unmistakably" provides for

5

arbitral resolution of arbitrability disputes with third parties. That contract's arbitration provision contains not a single mention of the Republic or of third-party beneficiaries in general.[1] (Banking Agreement art. 1.23.2.) To the contrary, it provides that disputes "shall be referred *by either Party* to arbitration." (*Id.* (emphasis added).) In fact, the arbitration clause refers only to the two parties to the Banking Agreement. (*Id.*) These observations are sufficient to preclude a finding that BNP and the United Nations "clearly and unmistakably" intended to afford anyone other than themselves the right to arbitrate arbitrability. *Cf. Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 125 (2d Cir. 2005) ("A clause requiring arbitration of disputes that does not include third parties suggests the parties to the contract did not envision that third parties would be in a position to bring suit under the contract."); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196-97 (3d Cir. 2001) (same); *O'Connor v. R.F. Lafferty & Co., Inc.*, 965 F.2d 893, 902 (10th Cir. 1992) (same).

The most that can be said is that the Banking Agreement contains evidence that BNP and the United Nations agreed to arbitrate the issue of who should decide whether a dispute is subject to arbitration only for disputes arising between the two of them. That alone does not entitle the Republic to arbitral resolution of the issue—simply because a party has agreed to arbitrate questions of arbitrability with its contractual counterpart "does not mean that it must arbitrate with *any* non-signatory" to the contract. *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 209 (2d Cir. 2005) (emphasis added). To decide whether "arbitration of arbitrability" at the

---

[1] The fact that the Banking Agreement makes no mention of third-party beneficiaries whatsoever does not, of course, *by itself* preclude the Republic from establishing that it is a third-party beneficiary. *See Oost-Lievense v. N. Am. Consortium, P.C.*, 969 F. Supp. 874, 879 (S.D.N.Y. 1997) ("Although the parties' intention to benefit the third party must be gleaned from the face of the contract, the defendant's obligation need not be explicitly stated in the contract itself." (internal quotation marks omitted)).

behest of a non-signatory is appropriate, "a court must first determine whether the [non-signatory and the signatory] have a sufficient relationship to each other and to the rights created under the agreement." [2] *Id.*

The circumstances here are not even remotely similar to the circumstances in *Contec* that supported a finding of "relational sufficiency." *Id.* at 209. In *Contec*, Contec Corporation sought to compel arbitration of a dispute pursuant to a manufacturing contract that its corporate predecessor, Contec L.P., had signed with Remote Solution. *Id.* at 207. Contec Corporation had the same ownership and the same business relationship with Remote Solution as Contec L.P had had. The panel allowed Contec Corporation to compel arbitration of arbitrability because it and Remote Solution had conducted themselves as if they were both subject to the manufacturing contract, despite Contec's simple change in corporate form. *Id.* at 209.

Here, the Republic is not a corporate successor to the United Nations nor does it otherwise stand in the United Nations' shoes. To the contrary, the Republic in fact urges that it is "the only party that can assert the breach of contract claim [against BNP] because it is the only party that was harmed by the alleged breach." (Pl.'s Reply in Supp. of Motion to Compel Arbitration ("Pl.'s Reply") at 6.) Nor is there any allegation or indication that BNP and the Republic conducted themselves as if they had a contract with one another. Indeed, the Republic concedes that the Banking Agreement "precluded BNP from taking instruction directly from the government of Iraq." (Pl.'s Supplemental Mem. in Opp. to Motion to Dismiss at 16 (citing Banking Agreement art. 1.8).)

---

[2] *Contec* appears to be the only case in which the United States Court of Appeals for the Second Circuit compelled arbitration of an arbitrability issue at a non-signatory's request. In another case the Second Circuit considered that possibility and flatly rejected it. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 53 n.11 (2d Cir. 2004); *see also In re Herman Miller, Inc.*, No. 97 Civ. 7878, 1998 WL 193213, at *4 (S.D.N.Y. Apr. 21,1998) ("Where the party seeking arbitration is not a party to the arbitration agreement, the question of arbitrability is for the court, not the arbitrator."), *aff'd sub nom. Herman Miller, Inc. v. Worth Capital, Inc.*, No. 98-7732, 1999 WL 132183 (2d Cir. 1999) (unpublished summary order).

The Second Circuit panel in *Contec* indicated that cases holding that a signatory was estopped from resisting a non-signatory's attempt to compel arbitration also provide a "benchmark for relational sufficiency." 398 F.3d at 209. In those cases, estoppel does not result simply because there is a "relationship of any kind" between the litigating parties and "their dispute deals with the subject matter of an arbitration contract made by one of them." *Ross v. American Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)). A sufficient relationship requires something more, for instance that the non-signatory possesses "some sort of *corporate* relationship to a signatory party," i.e. as a "subsidiar[y], affiliate[], agent[], [or] other related business entit[y]," *Ross*, 547 F.3d at 144 (emphasis in original); that the signatory was required to provide services to the non-signatory and to follow the instructions and directives of the non-signatory, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127-28 (2d Cir. 2010); that the non-signatory's dispute with the signatory is "bound up" with a dispute already in arbitration between the two signatories to the arbitration agreement, *Choctaw Generation Ltd. P'Ship v. Am. Home Assurance, Co.*, 271 F.3d 403, 407 (2d Cir. 2001); or that the non-signatory was explicitly tasked with performing certain duties in the contract containing the arbitration clause, *id.* at 406. The Republic's purported status as a third-party beneficiary is similar in neither degree nor kind to any of the relationships found sufficient in the estoppel context.

This Court concludes without hesitation that the Republic does not have a "sufficient relationship" with BNP, the United Nations or the Banking Agreement that would entitle it to compel arbitration of the arbitrability question presented here pursuant to the test enunciated in *Contec*. The Court, not an arbitrator, must resolve the question of whether this dispute is arbitrable. It is to that issue that this Court now turns.

C.  The Republic's Claims Are Not Arbitrable

The parties agree that whether the Republic may compel arbitration is a matter of New York contract law.  (Pl.'s Reply at 4; Def.'s Mem. in Opp. to Mot. to Compel at 13; *see* Banking Agreement art. 1.23.2.)  The Republic claims it is a third-party beneficiary of the Banking Agreement and that as a third-party beneficiary it is entitled to invoke any provision of that contract, including the arbitration clause.  The Court need not decide whether the Republic is a third-party beneficiary of the Banking Agreement.  As set forth below, the Court agrees with BNP's contention that the plain language of the agreement simply does not authorize the Republic to compel arbitration, regardless of whether or not it is a third-party beneficiary.

> *1. A third-party beneficiary's right to compel arbitration depends on the contracting parties' intent*

The Republic insists that a third-party beneficiary can assert any and all provisions of a contract.  Two principles of New York law put the lie to that notion.  First, under New York law "it is well settled that '[a] third party [beneficiary] is entitled only to those rights which the original parties to the contract intended the third party to have.'"  *Williams v. Progressive Ne. Ins. Co.*, 41 A.D.3d 1244, 1245, 839 N.Y.S.2d 381 (4th Dep't 2007) (quoting *Leavitt-Berner Tanning Corp. v. Am. Home Assurance Co.*, 129 A.D.2d 199, 203, 516 N.Y.S.2d 992 (3d Dep't 1987)).  Whether a third party benefits from a contract depends on the contracting parties' intent, *see Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 44, 485 N.E.2d 208, 495 N.Y.S.2d 1 (1985), and the parties can obviously intend for a third party to benefit from certain promises in a contract and not others.  Second, because "the threshold for clarity of [an] agreement to arbitrate is greater than with respect to other contractual terms," a court will not resort to "construction or implication" to find that a contract invests a third-party with a right to compel arbitration.  *Waldron v. Goddess*, 61 N.Y. 2d 181, 183, 185 (1984) (internal quotation

9

marks omitted). As a result, "[i]f a signatory to an agreement is to be required to arbitrate with a nonsignatory party, the agreement must so provide in express language." *H.I.G. Capital Mgmt., Inc. v. Ligator*, 233 A.D.2d 270, 271, 650 N.Y.S.2d 124 (1st Dep't 1996).

Applying these principles, New York courts have denied the right to compel arbitration to third parties that otherwise benefitted from a contract. In *Warner v. U.S. Securities & Futures Corp.*, the Appellate Division, First Department, addressed a contract that explicitly deemed a non-signatory to be a third-party beneficiary. The court held that that non-signatory could not compel arbitration because "it was not obvious that the third-party beneficiary clause was meant to modify the arbitration clause, which makes no mention of [the non-signatory] either by name or by function." 257 A.D.2d 545, 545, 685 N.Y.S.2d 25 (1st Dep't 1999). Similarly, in *Greater New York Mutual Insurance Co. v. Rankin*, the First Department, after stating the principle that "the right to compel arbitration does not extend to a party that has not signed the agreement pursuant to which arbitration is sought unless the right of the nonsignatory is expressly provided for in the agreement," found that a certain provision in a contract benefitted a non-signatory, but denied the non-signatory the right to compel arbitration because "nothing in the arbitration clause itself" suggested that the contract's signatories intended to confer upon the non-signatory the right to compel arbitration. 298 A.D. 2d 263, 263, 748 N.Y.S.2d 381 (1st Dep't 2002); *see Miness v. Ahuja*, 713 F. Supp. 2d 161, 164 (E.D.N.Y. 2010) (concluding that even if the defendants were third-party beneficiaries of a contract, they could not enforce an arbitration clause applying only to disputes arising between the contracting parties).

These results accord with the "general contract principle[]" that a court "may deem non-signatories to fall within the scope of an arbitration agreement *where that is the intent of the parties*." *McPheeters v. McGinn, Smith & Co., Inc.*, 953 F.2d 771, 772 (2d Cir. 1992) (emphasis

10

added).  In *McPheeters*, the court found that a brokerage firm could not compel arbitration because it was not a party or third-party beneficiary to the contract containing the arbitration provision.  *Id.* at 772-73.  The Second Circuit panel went on to explain that if the brokerage firm had been a party to the contract, it still would have been barred from compelling arbitration because the relevant arbitration provision only covered disputes between specifically named entities without any reference to disputes involving the brokerage firm.  *Id.* at 774.

> 2. *The parties to the Banking Agreement did not intend for the Republic to have the right to compel arbitration*

Whether the Republic is a third-party beneficiary of the Banking Agreement in a general sense does not dispose of the arbitration question posed herein.  It must also be that the parties intended the Republic to have the right to compel arbitration.

"Like any other contract, courts must interpret an arbitration provision to give effect to the parties' intent as expressed by the plain language of the provision."  *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) (applying New York law).  The plain language of the Banking Agreement demonstrates that BNP and the United Nations did not intend to permit a third-party to compel arbitration.  The arbitration provision provides that any dispute "unless settled amicably under Article 1.23.1 within sixty (60) days after receipt by *one Party* of the *other Party's* request for such amicable settlement, shall be referred by *either Party* to arbitration in accordance with the UNCITRAL Arbitration Rules."  (Banking Agreement art. 1.23.2 (emphasis added).)  This provision authorizes only "either Party," i.e. either BNP or the United Nations, to refer disputes to arbitration.  Moreover, the provision contemplates that the parties will resort to arbitration only after "one Party" requests of the "other Party" an amicable settlement pursuant to the procedures put in place for amicable settlement in Article 1.23.1.[3]  In

---

[3] Article 1.23.1 provides

other words, arbitration ensues only after either BNP or the United Nations requests amicable settlement of a dispute.  The emphasis on the "Parties" to the arbitration agreement indicates that the United Nations and BNP intended the right to compel arbitration to be exclusive to them. *See Waldron*, 61 N.Y.2d at 185.

The Republic's argument that it is a third-party beneficiary of the Banking Agreement actually reinforces this conclusion.  Although the Banking Agreement does not name the Republic as a third-party beneficiary, the Republic maintains that the United Nations and BNP intended it to have beneficiary status for the following gallimaufry of reasons: the purported principal purpose of the agreement was to permit the Republic to sell oil and purchase humanitarian goods; the agreement repeatedly referred to Iraq, Iraq's oil, and the Iraqi people; it established an escrow account to hold Iraqi funds; and it incorporated a memorandum of understanding between the United Nations and the Republic setting forth the terms of the Republic's participation in the Oil-for-Food Programme.  (Pl.'s Supplemental Mem. in Opp. to Mot. to Dismiss at 14-17.)  If the Republic is correct that BNP and the United Nations were operating from the premise that the Republic was to gain legally-enforceable benefits from the Banking Agreement, then the language of the arbitration provision excluding the Republic must be considered all the more purposeful: had the parties intended to extend the right of arbitration, they would not have drafted an arbitration provision that singled out the "Parties" and omitted any mention whatsoever of the Republic, as they did.  *See  Mowbray v. Moseley, Hallgarten,*

---

> The Parties shall use their best efforts to settle amicably any dispute, controversy or claim arising out of or relating to this Agreement or the breach, termination or invalidity thereof.  Where the Parties wish to seek such an amicable settlement through conciliation, the conciliation shall take place in accordance with the UNCITRAL Conciliation Rules then obtaining, or according to such other procedure as may be agreed between the Parties.

(Banking Agreement art. 1.23.1.)  The need for the Parties—and only the Parties—to agree on conciliation and on any alteration of the procedures for conciliation further illustrates that the Banking Agreement's dispute resolution mechanisms apply only to disputes between the Parties and no third party.

*Estabrook & Weeden, Inc.*, 795 F.2d 1111, 1118 (1st Cir. 1986); *Upper Lakes Towing Co. v. ZF Padova SpA*, No. 2:08-CV-63, 2009 WL 4730762, at *3 (W.D. Mich. Dec. 4, 2009).

The Republic cites no case in which a court has compelled arbitration at the behest of a third-party beneficiary where the relevant arbitration clause invests the right only in the contractual parties.[4]  Instead, the Republic argues that BNP could compel the Republic to arbitrate if BNP so desired, so it must be that the converse is true.  To be sure, there are circumstances in which a third-party beneficiary suing for breach of contract may be compelled to arbitrate *at the defendant's request* and *over the beneficiary's resistance*.  *See, e.g.*, *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F. Supp. 293, 300 (S.D.N.Y. 1997); *Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985).  These decisions implicate an equitable concern that the beneficiary "'cannot have it both ways. [He] cannot rely on the contract, when it works to [his] advantage, and repudiate it when it works to [his] disadvantage.'"  *Borsack*, 974 F. Supp. at 299 (alterations in original) (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 693 (S.D.N.Y. 1966)); *see Interpool Ltd.*, 635 F.3d at 1505 ("The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract." (internal quotation marks omitted)).  That principle is inapplicable where, as here, the beneficiary-qua-plaintiff seeks to compel arbitration.

In the circumstances presented here, the Court is compelled to follow the plain language of the Banking Agreement that limits the right to demand arbitration to BNP and the United Nations.  Accordingly, even if the Republic were to be a third-party beneficiary entitled to sue

---

[4] Second Circuit cases permitting third-party beneficiaries to compel arbitration involve contracts that, unlike the Banking Agreement, vest arbitration rights in broad classes of persons to which the beneficiaries belonged.  *See John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001) ("[a]ny dispute, claim or controversy . . . between a customer and a member and/or associated person"); *Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 863 (2d Cir. 1994) (same); *Spear, Leeds & Kellogg v. Cent. Life Assurance Co.*, 85 F.3d 21, 23 (2d Cir. 1996) ("any controversy between a [stock exchange] member . . . and any other person arising out of the business of such member").

for breach of contract, the Banking Agreement does not grant the Republic a right to compel arbitration. This conclusion obviates the need to address BNP's alternative argument that the Republic waived any right to arbitrate.

### III. CONCLUSION

For the reasons just elaborated, it is HEREBY ORDERED that the Republic of Iraq's motion to compel arbitration (Dkt. No. 396) is DENIED and BNP Paribas's motion to enjoin arbitration (Dkt. No. 413) is GRANTED.

Dated: New York, New York
       March 3, 2010

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

14