**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **THE REPUBLIC OF IRAQ, including as PARENS PATRIAE on behalf of the CITIZENS of the REPUBLIC OF IRAQ,** | **08-CV-05951 (SHS)** |
| **Plaintiff,** | **ECF CASE** |
| **- against -** | **ORAL ARGUMENT REQUESTED** |
| **ABB AG et al.,** | |
| **Defendants.** | |

**DEFENDANTS' REPLY TO THE REPUBLIC OF IRAQ'S RESPONSE TO THE
FIFTH NOTICE OF SUPPLEMENTAL AUTHORITY**

## DEFENDANTS JOINING IN REPLY

ABB AG
ABB Electric Sanayi AS
ABB France SAS (successor in interest to ABB
    Automation SAS and to ABB Industrie
    Champagne by way of its merger into ABB
    Automation SAS)
ABB Industrie AC Machines (now ABB
    Industrie AG/ABB Schweitz AG)
ABB Near East Trading Limited
ABB Solyvent-Ventec
ABG Allgemeine Baumaschinen
    Gesellschaft MbH
Aesculap AG and KG
Aesculap Motrics S.A.
Aesculap Surgical Instruments SDN BHD
AGCO Danmark A/S (erroneously named as
    AGCO Denmark A/S)
AGCO S.A.
Air Liquide Engineering
Akzo Nobel N.V.
Astra Zeneca AB
Atlas Copco Airpower N.V.
Atlas Copco CMT Sweden AB
AWB Limited
B. Braun Medical Industries SDN BHD
B. Braun Medical S.A.S.
B. Braun Melsungen A.G.
BNP Paribas Hong Kong
BNP Paribas London Branch
BNP Paribas Paris
BNP Paribas (Suisse) SA
BNP Paribas UK Holdings Limited
BNP Paribas USA
Boston Scientific SA
Buhler Ltd.
CG Holdings Belgium N.V. (f/k/a Pauwels
    International N.V.)
CILAG AG International
Clyde Union, S.A.S. (f/k/a/ Union Pumps, S.A.S.)
Daewoo International Corp
David B. Chalmers, Jr.
David Brown Transmissions France, S.A.S
Doosan Benelux SA, as successor to Ingersoll-
    Rand Benelux, N.V.
Dow AgroSciences LLC
Dow AgroSciences S.A.S.
El Paso Corporation
Eli Lilly Export SA
Evapco Europe S.R.L.

F. Hoffmann-La Roche Ltd.
Flowserve B.V.
Flowserve Corporation
Flowserve Pompes S.A.S.
Glaxo Wellcome Export Ltd.
Glaxo Wellcome SA (South Africa)
    (PRY) Ltd.
GlaxoSmithKline Egypt SAE
GlaxoSmithKline Walls House
Ingersoll-Rand Italiana S.p.A.
Ingersoll-Rand World Trade Ltd.
Intervet International B.V.
Janssen Pharmaceutical
Kia Motors Corporation (erroneously named as
    "Kia Motors")
Liebherr Export AG
Liebherr France, SA
Merial SAS
N.V. Organon
Novo Nordisk A/S
Oscar S. Wyatt, Jr.
OSRAM Middle East FZE
Railtech International SA
Renault Agriculture & Sonalika International
Renault Trucks SAS (f/k/a Renault V.I.)
Roche Diagnostics GmbH
Rohm and Haas France, S.A.
Secalt S.A.
Serono Pharma International
Siemens S.A.S. France (erroneously named as
    Siemens S.A.A. of France)
Siemens Sanayi ve Ticaret A.Ş. (erroneously named
    as Siemens Sanayi ve Ticaret A.S.
    of Turkey)
SmithKline Beecham International
Solar Turbines Europe, S.A.
Sulzer Pumpen Deutschland, GMBH
Sulzer Turbo Ltd.
Textron, Inc.
The Weir Group PLC
Thermo King Ireland Ltd.
Valtra do Brasil Ltda. (erroneously named as
    Valtra do Brazil)
Vitol, S.A.
Volvo Construction Equipment AB (as
    successor to Volvo Construction Equipment
    International)
Woodhouse International, LLC
York Airconditioning & Refrigeration FZE

The Republic of Iraq's Response to Defendants' Fifth Notice of Supplemental Authority (Dkt. 473) mischaracterizes both Iraq's own allegations and the law.  Although Iraq appears to have abandoned its earlier argument that *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), does not apply to RICO, *see* Pl.'s Resp. to Defs.' Notice of Supplemental Authority at 4-6 (Dkt. 440), it now attempts to recast its case into one targeting alleged domestic RICO violations, *see* Pl.'s Resp. to Defs.' Fifth Notice of Supplemental Authority at 2 (Dkt. 473).  But the Second Circuit, relying on *Morrison*, has rejected the argument that RICO applies to "allegations . . . primarily involv[ing] foreign actors and foreign acts."  *Norex Petroleum Ltd. v. Access Indus., Inc.,* 631 F.3d 29, 31 (2d Cir. 2010).  In fact, as Defendants noted in their Third Notice of Supplemental Authority (Dkt. 456), plaintiffs' allegations in *Norex* included precisely the sort of activity challenged here:  "illegal participation . . . in the Iraqi 'oil-for-food' program." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 540 F. Supp. 2d 438, 440 (S.D.N.Y. 2007).

In an effort to escape the reach of *Morrison* and *Norex*, Iraq cites a recent decision from the Eastern District of New York, *European Community v. RJR Nabisco, Inc.,* Civ. No. 02-5771, 2011 WL 843957 (E.D.N.Y. Mar. 8, 2011), claiming that Defendants have "failed to address" Iraq's argument that the First Amended Complaint ("FAC") alleges a domestic RICO enterprise, *see* Pl.'s Resp. to Defs.' Fifth Notice of Supplemental Authority at 1 (Dkt. 473), even though Defendants have already briefed that issue, *see* Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 55-61 (Dkt. 365); Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 31-32 (Dkt. 425); Reply to Pl.'s Resp. to Defs.' Notice of Supplemental Authority at 1 n.1 (Dkt. 447).  In Iraq's view, *European Community* is important because of the FAC's conclusory allegation that the claimed RICO enterprise is either the Oil-for-Food Program itself, or an "association-in-fact enterprise of the Iraq Sanctions Program" that purportedly includes the Program, various United Nations

organs, and Defendants as alleged Program participants.  Pl.'s Resp. to Defs.' Fifth Notice of Supplemental Authority at 3 (Dkt. 473) (citing FAC ¶¶ 1136-37).

Apart from misreading *European Community* and its relationship to *Norex* and *Morrison* (discussed below), this argument confirms that Iraq has not pleaded a cognizable RICO claim. ***First***, if the enterprise alleged is the Program itself—or, more remotely, the U.N. itself, *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 60 (Dkt. 393) (requesting "leave to amend to change the designated enterprise to the United Nations itself")—then Iraq clearly, and fatally, has not pled that Defendants played a "part in directing [the] affairs" of the purported enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Iraq has not pled, and could not plausibly plead, that Defendants directed the affairs of either the Program or the U.N. as a whole.  To the contrary, if the FAC alleges that anyone managed to take over direction of the Program, Iraq did so by requiring those who wished to participate in the Program to acquiesce in making various payments.  ***Second***, if the enterprise alleged is the association-in-fact of the Program, various U.N. organs, and a hodgepodge of entities including Defendants, Iraq's enterprise allegation does not make sense at all, much less identify an enterprise with a recognizable "structure" and "common purpose."  *Boyle v. United States*, 129 S. Ct. 2237, 2244 (2009) ("[A]n association-in-fact enterprise must have a structure" and "***a common purpose*** of engaging in a course of conduct.") (emphasis added).  It is not even conceivable, let alone plausible, that an alleged association-in-fact enterprise consisting of the Program, other U.N. organs, ***as well as*** Defendants ***and*** Iraq itself could have a coherent structure and a common purpose.

These problems aside, whatever the alleged enterprise, the FAC does not—and cannot— allege that the enterprise's "nerve center" is predominantly in the United States.  Rather, "the Program" is essentially a word-handle describing an ***international*** set of decisions and the oil-

producing, oil-selling, food-importing activities focused in Iraq, with just some of those operational activities being in New York. If the purported enterprise is the even broader association of "the Program" plus Defendants and U.N. organs, the ***international*** nature of the decisions involved is further accentuated and the Iraq-focused producing, selling and importing activities remain the same. And if the purported enterprise is the United Nations, then its "nerve center" is as ***international*** as could be.[1]

In all events, Iraq's reliance on *European Community* does not salvage its claims here because Iraq fundamentally misreads that case. Although *European Community* did analyze the physical location of the enterprise, Iraq's overly-expansive reading of this fact conflicts unavoidably and directly with the Second Circuit's holding in *Norex*, where the Court made clear that RICO does not reach "allegations . . . primarily involv[ing] foreign actors and foreign acts." *Norex,* 631 F.3d at 31. Iraq's reading of *European Community*, however, would suggest that RICO covers ***entirely foreign actors and predicate acts*** as long as the enterprise can be characterized as American. According to Iraq's misreading of *European Community*, the Second Circuit in *Norex* focused entirely on irrelevant criteria: "foreign actors and foreign acts."

But *European Community* did not purport to question *Norex* as Iraq now suggests, nor could it have, as *Norex* was controlling authority in that case as it is here. Instead, *European Community* focused on the physical location of the enterprise because, per *Norex*, it was a convenient way to emphasize the "foreign actors and foreign acts" in question. In dismissing the

---

[1]    Defendants have repeatedly pointed out the flaws in Iraq's argument, which is based solely on two state court criminal cases from 1962 and 1976, that U.N. conduct may provide a basis for an actionable RICO claim. Iraq's assertion that Defendants' explanation is "without support" simply ignores numerous cases cited by Defendants, including Second Circuit precedent. *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss at 55-61 (Dkt. 365) (citing, *inter alia, Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) (holding that U.N. headquarters "is not really United States territory at all")); Reply Mem. in Supp. of Defs.' Mot. to Dismiss at 31-32 (Dkt. 425) (same).

plaintiff's RICO claim, the district court found that to the extent the allegations described a RICO enterprise at all, it was one where the "overall corporate policy" of masterminding the alleged illegal drug smuggling, currency swaps, currency purchase and money laundering activity "originate[d] with organized criminal organizations in Europe and South America." 2011 WL 843957, at *7. The court declined to find that the "nerve center" of the purported RICO enterprise was in the U.S., because the plaintiff had alleged that the domestic tobacco companies had participated in these activities merely through "a complex series of transactions," without any explanation of how the domestic entities had "organized, orchestrated, planned, or even participated" in the alleged wrongful acts. *Id.*

*European Community*'s analysis leads to the same result here that it did there: dismissal. The purported "enterprises" alleged in the FAC are international and the "brains" behind the purported RICO violations were in Iraq, where the Hussein regime "designed and instigated" a scheme to subvert the international Oil-for-Food Program. FAC ¶ 4; *see also id.* ¶¶ 523-24. The U.N. entities no more "organized, orchestrated [or] planned" the alleged subversion of the Program than the domestic tobacco companies directed the wide-ranging, foreign-masterminded alleged RICO enterprise in *European Community*. In short, *European Community* highlights precisely why this case cannot proceed in the wake of *Morrison* and *Norex*.

Under *Norex*, Iraq's claim that the alleged RICO enterprise is domestic is belied by the overwhelmingly foreign nature of the parties involved, the actions challenged, and the alleged injury for which Iraq claims an entitlement to relief in the FAC, which alleges that:

- Iraq's former government "designed and instigated" corruption of the Program in order to obtain illicit revenues, including through the imposition of "kickbacks" and "surcharges," FAC ¶¶ 1, 4, 350-92, 521-630, 640-61;

- the Iraqi government implemented "a variety of schemes to systematically divert funds" in connection with contracts for the sale of goods to Iraq, *id.* ¶¶ 521, 524;

4

- official Iraqi directives imposed oil surcharges, transportation fees and "after sales service fees" on contracts for providing goods and services to Iraq under the Program, *id.* ¶¶ 302, 362-64, 369, 458, 526-27, 535;

- the alleged kickbacks and surcharges were ordered and administered by Iraqi government entities and paid into the Iraqi treasury, *id.* ¶¶ 526-27, 535, 568, 621-28; and

- the various surcharges and fees diminished the funds available to Iraq for purchasing humanitarian goods and services for its citizenry, *id.* ¶ 1111.

These allegations confirm that Iraq's RICO claim is extraterritorial: alleged kickbacks and surcharges were paid on contracts in Iraq, instigated by the Iraqi government, concerning the supply of goods and services in Iraq, with the goal of perpetuating the Iraqi regime and thwarting international sanctions. That Program contracts were allegedly submitted to the U.N. and that payments were allegedly made via U.S.-based bank accounts, *see id.* ¶¶ 534, 573, 601, does not transform the alleged scheme into a domestic RICO enterprise.[2] This is because "it is a rare case of prohibited extraterritorial application that lacks **all** contact with the territory of the United States." *Morrison*, 130 S. Ct. at 2884 (emphasis in original); *see also id.* ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever **some** domestic activity is involved in the case.") (emphasis in original).

Iraq's arguments concerning the identity and geography of the purported RICO enterprises is an ill-founded effort to throw domestic window dressing on a purported scheme that, by Iraq's own allegations, was overwhelmingly foreign in origin, direction, operation and impact. But such window dressing falls far short of achieving Iraq's objective of securing a U.S. forum to prosecute a RICO claim with its prospect of trebled damages. As Defendants' motion

---

[2]   *Accord Cedeno v. Intech Grp., Inc.*, 733 F. Supp. 2d 471, 472-74 (S.D.N.Y. 2010) (RICO claim was extraterritorial and therefore warranted dismissal where "[t]he scheme's contacts with the United States … were limited to the movement of funds into and out of U.S.-based bank accounts.").

to dismiss briefing made clear, Iraq's RICO allegations do not even satisfy the "conduct" or "effects" tests that governed before *Morrison*.  Iraq certainly cannot satisfy the more stringent standard set forth in *Morrison* and *Norex*.  Iraq's allegations are clearly extraterritorial in nature and thus do not state a RICO claim.

Respectfully submitted,

Dated:  April 13, 2011

_____/s/ Brant W. Bishop, P.C._____

Thomas D. Yannucci, P.C.
Brant W. Bishop, P.C.
John R. Bolton
Robert B. Gilmore
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Suite 1200
Washington, DC 20005
(202) 879-5000
thomas.yannucci@kirkland.com
brant.bishop@kirkland.com
john.bolton@kirkland.com
robert.gilmore@kirkland.com

*Counsel for Siemens S.A.S. France,*
*Siemens Sanayi ve Ticaret A.Ş, and*
*OSRAM Middle East FZE*

*And, by permission, on behalf of all joining*
*defendants*

## <u>CERTIFICATE OF SERVICE</u>

I, Brant W. Bishop, P.C., hereby certify that I caused a true and correct copy of the foregoing DEFENDANTS' REPLY TO THE REPUBLIC OF IRAQ'S RESPONSE TO THE FIFTH NOTICE OF SUPPLEMENTAL AUTHORITY to be served via ECF upon all counsel of record registered through the Court's ECF system.

On this 13th day of April, 2011.

_____/s/ Brant W. Bishop, P.C._____
Brant W. Bishop, P.C.
*Counsel for Siemens S.A.S. France,*
*Siemens Sanayi ve Ticaret A.Ş., and*
*OSRAM Middle East FZE*